UNITED STATES of America, Plaintiff,

Environmental Defense, North Carolina Sierra Club, North Carolina Public Interest Research Group, Plaintiff–Intervenors,

v.

DUKE ENERGY CORPORATION, Defendant.

No. 1:00CV1262.

United States District Court, M.D. North Carolina.

June 7, 2002.

**554**

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, Lois J. Schiffer, U.S. Department of Justice, Environment & Natural Resources Div. Washington, DC, Robert A. Kaplan, Sonja Petersen, Jason Dunn, John C. Cruden, Washington, DC, Alan Dion, Atlanta, GA, for U.S.

James Blanding Holman, IV, Chapel Hill, NC, Jeffrey M. Gleason, Charlottesville, VA, for Environmental Defense, North Carolina Sierra Club and North Carolina Public Interest Research Group Citizen Lobby/Education Fund.

Daniel W. Fouts, Robert Harper Heckman, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, Albert Diaz, Hunton & Williams, Charlotte, NC, T. Thomas Cottingham, III, Nash E. Long, III, Wood W. Lay, Hunton & Williams, Charlotte, NC, Garry Stephen Rice, Charlotte, NC, Mark B. Bierbower, Henry V. Nickel, William F. Brownell, Makram Jaber, Hunton & Williams, Washington, DC, for Duke Energy Corp.

## ORDER

ELIASON, United States Magistrate Judge.

Defendant Duke Energy Corporation ("Duke") has filed a motion for a protective order covering certain of plaintiff's Fed. R.Civ.P. 30(b)(5) & (b)(6) requests. The action itself arises under Sections 113(b) and 167 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7413(b)(2) and 7477. Among the claims is an allegation of violation of the New Source Review ("NSR") provisions of the CAA. The plaintiff United States of America contends that under the NSR, a "modification" of an air pollution source can trigger an application approval and permitting process. This process can span years and cost millions of dollars. Plaintiff claims that defendant engaged in 29 such projects. It spent more than $300 million in rebuilding eight plants, thereby extending their life so as to constitute major modifications. As a result, plaintiff contends defendant was required to, but did not, (1) make projections as to whether the projects would significantly increase net emissions, (2) apply for the NSR permit, nor (3) install the appropriate pollution controls.

Defendant frames the issue as an interpretation disagreement between it and the United States. Duke alleges that the NSR only applies if the projects were to increase the power generation unit's maximum achievable hourly rate. It contends that did not occur.

The United States questions Duke's interpretation and emissions figures and wants information about them, which it sought in the Rule 30(b)(5) & (b)(6) notices. It points out that two of Duke's affirmative defenses rely entirely on emissions calculations, *citing* ¶¶ 314 and 315 of the answer (no emissions

increase or any increase caused by growth in demand).

In this motion, Duke states that it has produced emissions data figures and will produce a witness who will testify about emissions calculations and analyses performed by Duke in connection with projects up to the time the Environmental Protection Agency ("EPA") issued a Notice of Violation to defendant on May 9, 2000. What defendant seeks to withhold are calculations and analyses of emissions performed by Duke Engineer Tom Weir, Duke's in-house counsel, and outside counsel, after that date. Apparently, this group prepared calculations and analyses from raw emissions data which would include different ways the data could be analyzed, and they then prepared charts reflecting these analyses. Charts were prepared for each project listed in the complaint. Defendant claims that these preparations constitute attorney-client communication and also Rule 26 work product. As a result, defendant filed the instant motion for a Rule 26(c) protective order striking certain provisions of the Rule 30(b)(5) & (b)(6) Notices for deposition and requests for documents directed to the corporation.

The United States responds that it does not seek attorney instructions, advice, or analyses of the calculations, but simply the formula used by Duke and the results of that formula. The United States contends that the formula and results are factual information and not attorney-client communication, nor matters subject to work product protection. The United States expresses a concern that if defendant were to prevail, the United States would see the emissions calculations underlying Duke's defenses, including all underlying input Duke used to make the calculations, for the first time at trial. It asserts that mere disclosure of raw emissions data does not reveal the basis for Duke's defense. The United States claims it only wants and needs the " 'projected' future actual emissions, meaning the emissions that would be predicted by Duke." (Br. at 3 [emphasis in original] )

### Discussion

■ Defendant has timely moved for a protective order pursuant to Fed.R.Civ.P. 26(c) and, thus, the matter is properly before the Court. *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C.1991). The party seeking the protective order, in this case defendant, bears the burden of showing good cause for the protective order by a specific demonstration of facts in support of that request. *Id.* In the instant case, defendant wants a protective order to cover all "calculations and analyses regarding emissions prepared by Thomas H. Weir, Jr. and those working with him, after the Environmental Protection Agency issued a Notice of Violation to Duke Energy on May 9, 2000." (Def. Motion at 1) The ground for the protective order is the assertion that said material is covered both by the attorney-client privilege and work product doctrine. For the same reasons, defendant wants protection against producing any witness to testify in response to topic numbers 1, 3, and 7 of Attachment A.[1] It also wants a protective order that it need not produce any documents in response to Request Nos. 1, 3, and 8 of Attachment B.[2]

---

1. Schedule A of the Notice, which is the Rule 30(b)(6) portion, requests:

    1. For each of the Activities, the facts concerning all calculations of emissions of oxides of nitrogen (NOx), sulfur dioxide (SO2), or particulate matter (PM), prior to the activity and after the activity.

    3. The criteria used by Duke to determine if any of the Activities did or did not result in a significant net emissions increase of oxides of nitrogen (NOx), sulfur dioxide (SO2), or particulate matter (PM), as defined by 40 C.F.R. §§ 52.21(b)(3)(i) and (b)(23).

    7. The manner and methods used by Duke, from 1982 to present, to calculate its emissions of oxides of nitrogen (NOx), sulfur dioxide (SO2), or particulate matter (PM).

(Def.Br. at 4)

2. Schedule B, which is the Rule 30(b)(5) Notice, requests:

    1. All documents related to calculations of the emissions described in Topic I of Attachment A.

    3. All documents related to criteria described in Topic 3 of Attachment A.

    8. All documents currently in Duke's possession, custody or control, from any source, including but not limited to any state or federal entity, related to the manner and methodology of Duke's calculation of emissions under Subchapter I, Part C, Prevention of Significant Deterioration of Air Quality of the Clean Air

For the attorney-client privilege, the Fourth Circuit utilizes the "classic test."[3] *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir.1998). The key element of the privilege is the protection of confidential communications. *Id.* The proponent of the privilege bears the burden of showing applicability. *Id.* In this case, the United States says that it does not want counsel's opinions or advice, but only Weir's opinions. However, the attorney-client privilege clearly encompasses the client's communications to the attorney for the purpose of obtaining legal advice and, thus, covers an employee's, such as Weir's, communications of fact and opinions to counsel. *In re Allen*, 106 F.3d 582, 606 (4th Cir.), *suggestion for reh'g en banc denied*, 119 F.3d 1129 (1997), *and cert. denied sub nom, McGraw v. Better Government Bureau, Inc.*, 522 U.S. 1047, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998). Plaintiff may not pry into the communications Weir made to counsel for purposes of preparing Duke's defense.

Next, the documents containing calculations and analyses ordered by the attorney in order to prepare and evaluate possible defenses clearly fall under Fed.R.Civ.P. 26(b)(3) work product protection. *See Pete Rinaldi's Fast Foods, Inc. v. Great American Insurance Companies*, 123 F.R.D. 198 (M.D.N.C.1988). Of course, this protection does not cover documents which a company prepares in the ordinary course of business. *Id.* at 202. As to that matter, it is not quite so clear that all of the documents sought were generated solely because of the prospect of litigation, as opposed to those generated in the regular course of business.[4] The proponent of work product protection bears the burden of proving entitlement. *Id.* at 201. Defendant does not elaborate and show that none of the documents were generated in the ordinary course of business, but solely for purposes of preparing Duke's defense. Therefore, any ruling will necessarily also be non-specific and only protect documents generated by Weir and counsel solely for the purpose of preparing a defense. To that extent, defendant's request for a protective order is too broad and must be limited, as noted above. If documents are withheld, Duke shall provide plaintiff with a list of the documents with a brief description of each document and the basis for withholding it.

Plaintiff alternatively contends that the emissions calculations and analyses are discoverable under the work product hardship exception because it "has substantial need of the materials in preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). This exception involves consideration of two factors. A party must make a strong showing of the documents' relevance and importance in conjunction with an inability to obtain the facts or their substantial equivalent from other sources. *Suggs v. Whitaker*, 152 F.R.D. 501, 507 (M.D.N.C.1993). The United States has shown that the nature of the documents it seeks are important to the case.

Act, 42 U.S.C. §§ 7470 –7479, and the implementing federal and state regulations. (Def.Br. at 5)

3. The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)).
*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).

4. For example, Schedule B, Request No. 1, referencing Schedule A, Topic No. 7, requests documents reflecting the manner and methods used by Duke from 1982 to present to calculate emissions. This includes a time period prior to the May 9, 2000 violation notice. Also, plaintiff contends Duke did perform some emissions calculations as part of its compliance duties under federal law. (Br. n. 7, at 10) Defendant must disclose calculations, criteria, matters, and methods it has used to examine emissions prepared as part of its normal business practice, including those required in order to comply with federal law.

They may contain defendant's defense to the claims and are needed before trial to avoid surprise.

■ However, the second factor speaks of obtaining facts, not opinions. In the instant case, Duke has given the United States the "facts" in the form of raw emissions data. What it seeks to withhold are its opinions or theories, and documents generated therefrom. These are not "facts." In contrast to fact work product, opinion work product is entitled to near absolute protection against disclosure, except in rare and extraordinary circumstances, which plaintiff has not shown. *In re Allen,* 106 F.3d at 607. Therefore, the Court finds that plaintiff has not established entitlement to the work product exception.[5]

■ The finding that plaintiff seeks opinion work product does not end the matter. As noted above, the United States has established substantial need for the documents. Moreover,

> [t]his portion of Rule 26(b)(3) [concerning opinion work product protection] must be read in harmony with Rules 33(b) and 36(a), which, as amended in 1970, allow interrogatories and requests for admissions involving opinions or contentions that relate to fact or the application of law to fact. Interrogatories and requests for admissions of this type do require the attorney to disclose, to some extent, mental impressions, opinions, and conclusions, but he or she is entitled to keep confidential documents containing these matters that have been prepared for internal use.

8 Charles Alan Wright *et al., Federal Practice and Procedure* § 2026, at 404–405 (2nd ed. 1994) This tension is not resolved by looking to the work product exception, but by looking to the Court's inherent power, along with use of Rules 16 and 26, to regulate case

management for discovery and trial. *Edward Lowe Industries, Inc. v. Oil–Dri Corp. of America,* No. 94 C 7568, 1995 WL 609231 *5 (N.D.Ill. Oct.13, 1995). The "court may require disclosure of strategic decisions as part of its general case management pursuant to Rule 16." 8 Wright *et al., supra,* § 2026, at 404–405. To that end, the Court may take such action *sua sponte,* along with setting the time for disclosure. *See generally In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1021 (1st Cir. 1988).

■ The Federal Rules of Civil Procedure provide broad powers for the Court to regulate case management and scheduling through Rule 16. 8 Wright *et al., supra,* § 2026, at 404–405; *Edward Lowe Industries,* 1995 WL 609231 *5. The Court is directed to establish continuing control of the case and improve the quality of trial through more thorough preparation. Rule 16(a). It may take such actions necessary to control and schedule discovery pursuant to Rule 26 and Rules 29 through 37. Rule 16(c). The Court may adopt special procedures for unusual problems. *Id.* In addition, Rule 26(a) requires a party to disclose witnesses who will support a claim or defense and documents that will be used to support a claim or defense. The timing of expert testimony is also regulated by Rule 26(a)(2). None of these rules provide a party with permission to withhold preparation and selection of the defenses until the time of trial simply because those defenses may have arisen or been generated through attorney-client communications, or have been recorded in work product protected documents. The actual conversations and documents may be protected, but not the facts or theories which will be used at trial to support the defense.[6]

---

**5.** While plaintiff disclaims seeking opinion work product, it wants more than the input data. It also wants the results of the calculations. This is opinion work product because Duke necessarily contends that there is more than one way to get the results. It points out that plaintiff has admitted, in other litigation, that there are at least eight different ways to calculate emissions. The selection of the method involves a strategic decision and constitutes opinion work product.

**6.** Indeed, when the defense itself is based on a past attorney-client communication, *i.e.,* advice of counsel, a party may be required to make a pretrial election as to whether it is going to use that defense and, if the decision is in the affirmative, then reveal the otherwise confidential communication pre-trial. *Glenmede Trust Company v. Thompson,* 56 F.3d 476, 486–87 (3d Cir.1995); *Edward Lowe Industries, Inc. v. Oil–Dri Corp. of America,* No. 94 C 7568, 1995 WL 609231 *5 (N.D.Ill. Oct.13, 1995).

■ A party may not use a privilege (or work product) as a shield during discovery and then hammer it into a sword for use at the trial. *Edward Lowe Industries*, 1995 WL 609231 *5. The Court may order the pretrial disclosure of strategic decisions upon pain of penalty. The penalty is that failure to reveal decisions, information, or documents pretrial shall preclude defendant from using such decisions, information, or documents at trial. *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 566 (S.D.Fla.2001); *Edward Lowe Industries*, 1995 WL 609231 *5.

■ The Court has a duty to protect the trial process by ensuring that pretrial preparation discovery can be properly used to narrow the issues in controversy and allow for informative trial cross-examination. *Tabatchnick v. G.D. Searle, & Co.*, 67 F.R.D. 49, 54 (D.N.J.1975). Accordingly, this corporate defendant can be required to provide plaintiff with the basis for its defense by selecting a corporate designee to give deposition in areas 1, 3 and 7 of Schedule A, and to produce documents 1, 3 and 8 as demanded in Schedule B which support such testimony. *See generally United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C.1996). The corporate designee need not be Mr. Weir and, if it is Mr. Weir, he need not reveal the actual past confidential communications and documents, but he must be fully prepared to reveal Duke's defense. Defendant will have to choose from among its various possible defenses and provide the testimony and documents which it will use to support those defenses at trial.

Defendant has made an off-hand comment that the deposition and document exchange need not take place until the time for exchange of expert reports. Yet, the parties have not provided the Court with a basis to conclude that such testimony either is or is not expert testimony. Because defendant bears the burden of persuasion in obtaining a protective order and has not met that burden to show the discovery requests involve expert testimony, the Court will not allow defendant to withhold revelation of its defenses until the time for expert reports and depositions. This does not mean that the Court does not

encourage the parties to meet and confer in order to work out an acceptable plan for exchanging such information, including delaying the deposition until the time for expert testimony. After all, the United States may be in the same situation as defendant because it too, at some time, will have to reveal its chosen method and calculations for evaluating emission levels.

**IT IS THEREFORE ORDERED** that defendant's motion for a protective order (docket no. 52) is granted in part and denied in part, and defendant Duke Energy Corporation need not reveal the calculations and analyses regarding emissions prepared by Thomas H. Weir and its attorneys after the Environmental Protection Agency issued a Notice of Violation on May 9, 2000, or any documents created in that effort which were generated solely in order for defendant to prepare its defense. However, defendant is required to reveal calculations performed in the ordinary course of business, and, for any defense which it wants to preserve, it must reveal the nature of its defense, including calculations and analyses regarding emissions, by producing a witness who will testify in response to topic nos. 1, 3 and 7 of Attachment A to the Rule 30(b)(6) deposition notice, and must produce documents pursuant to request nos. 1, 3 and 8 of Attachment B to the Rule 30(b)(5) requests.

**IT IS FURTHER ORDERED** that the parties meet and confer in order to establish a reasonable schedule for defendant to produce such information and, if applicable, for the scheduling of similar discovery from plaintiff concerning such information.